OPINION
{¶ 1} Appellant James Collins appeals a judgment of the Tuscarawas Court of Common Pleas, convicting him of assault of a peace officer (R.C. 2903.13), a felony of the fourth degree, and assault (R.C.2903.13[A]), as a misdemeanor of the first degree:
 {¶ 2} "When evidence establishes self-defense, a conviction of a defendant for assault of a police officer is against the manifest weight and sufficiency of the evidence.
 {¶ 3} "A court errs when it fails to give legally-applicable, requested instructions to a jury."
 {¶ 4} On May 20, 2001, appellant took his son, Jimmy Collins, to the home of Helen Jeanne Warner, his fourth cousin and girlfriend, for the purpose of doing yard work. Helen also has a son named Jimmy, and both boys were twelve years old. Helen was having difficulty disciplining her son, as her ex-husband, the boy's father, was in jail for vehicular homicide. Appellant was helping her discipline her son, and planned on supervising the boys while they worked in the yard.
 {¶ 5} Appellant arrived at Helen's home with a 12-pack of beer. He had recently completed alcohol rehabilitation. Helen was upset to see him with alcohol, as alcohol caused problems in her marriage, and she has no tolerance for alcohol.
 {¶ 6} The boys worked in the yard for two or three hours, using hand tools, electric trimmers, and a machete. While supervising the boys, appellant consumed eight beers. Joyce Morrell, who lived next door, noticed that appellant was directing the boys using a gruff manner.
Eventually, appellant and the boys went into the house. An argument ensued between appellant and Helen over whether the boys should continue working in the yard, and whether appellant should be drinking while supervising the boys. An altercation ensued, and Jimmy Warner ran out of the house to go next door to call the police. When Jimmy left the house, appellant chased him. Appellant caught him outside, threw him against the tree, and choked and kicked him.
 {¶ 7} Joyce Morrell witnessed the incident, and yelled across the yard to Helen that she was going to call the police.
 {¶ 8} Upon receiving the call that appellant was assaulting a young boy, New Philadelphia Police officers Keith Limbacher, Aaron Fulton, and Larry Kopp were dispatched to the scene. When they arrived, Officer Kopp went into the home to talk to Helen, while Officer Fulton talked to the boys, who were standing outside on the sidewalk and were visibly upset. Officer Limbacher approached appellant. Appellant was sitting on the front steps, surrounded by a variety of tools, including a rake, shovel, electric hedge trimmers, and a machete. There were empty beer cans scattered on the porch, and appellant was holding a beer in his hand.
 {¶ 9} Officer Limbacher asked appellant for his name, and asked him to step away from the tools. Appellant replied that he "needed to ask him please." Appellant refused to come and talk to the officer, and appeared to the officer to be very agitated and intoxicated. When appellant refused to respond to the officer's request to step away from the tools and talk to him, the officer told appellant he would place him under arrest. At this point, appellant yelled, "If you put those cuffs on me, I'll fuckin' hurt you." Upon hearing appellant threaten Officer Limbacher, Officers Kopp and Fulton immediately came to the porch.
All three officers began to attempt to place handcuffs on appellant. Appellant was uncooperative, taking an aggressive stance, and continually trying to pull away from the officers. At one point, Fulton attempted to spray appellant with pepper spray, which had little effect, other than to make appellant more angry. While the officers attempted to place the handcuffs on appellant, appellant continuously swung at them. Finally, the officers were able to place the handcuffs on appellant, and take him to the cruiser. He continued swearing at them and attempted to jerk away. While Officer Fulton was unlocking the cruiser, appellant kicked him in the groin area.
 {¶ 10} Helen, Jimmy Warner, and Jimmy Collins gave written statements to the police, stating that appellant was physically aggressive with all three of them in the home, and when Helen told Jimmy Warner to call the police, appellant chased after him, throwing him against the tree, and choking him.
 {¶ 11} Appellant was indicted by the Tuscarawas County Grand Jury for one count of assault on a peace officer, one count of domestic violence, and two counts of misdemeanor assault.
The case proceeded to jury trial in Tuscarawas County Common Pleas Court. At trial, Helen claimed that upon further reflection, she had not properly reported to the police the events on the day in question. At trial, she claimed that the fight in the house escalated only because her German Shepherd, Wally, was growling at appellant. She claimed that the boys were afraid appellant would hit the dog, and had jumped in front of appellant to protect the dog. She claimed that her son ran off not to call the police, but because he did not want to finish the yard work. She testified that Jimmy Warner tripped on the sidewalk, and when appellant grabbed him to save him from falling, he ended up against the tree. She stated that the statement she made to police, and the statements the children gave to the police, were false. She also testified that appellant lit a cigarette after the police arrived on the scene, and when he refused to put it out, they sprayed him with pepper spray and began beating him with sticks. She claimed that the police shoved and punched him hard enough that his partial fell out of his mouth.
 {¶ 12} Appellant testified at trial that he and Helen, who he calls Jeanne, had been arguing all day. He testified that she had been yelling at him for "everything since Abraham Lincoln's been shot." He admitted that he was drinking beer on the day in question, but testified that he only drank seven beers, as when he was released from jail, five were still in the refrigerator, which Jeanne intended to use for shampoo. He also admitted that he had been gruff with boys, using profanity; however, he is a strong disciplinarian. He also testified that the argument in the home began over the dog, which Jeanne had no control over, but he was trying to train. He said that he felt the dog was going to attack him. He testified that when he followed Jimmy Warner, he wanted the boy to finish the yard work, and was not trying to stop him from calling the police. He testified that he grabbed Jimmy by his shirt, pinned him against the tree, and told him, "Get your ass back to work." Appellant also testified that the police officers "beat the hell" out of him, giving him a black eye, and injuring his shoulder, which he injured in a motorcycle accident the previous summer. He testified that the officers knocked his partial out of his mouth, which he wore because of injuries sustained in a fight. He claimed the handcuffs were too tight, causing torn tendons in his wrists. He testified that Officer Fulton slammed his head against the car, and so he kicked him.
The jury found appellant not guilty of the domestic violence charge, and not guilty of the misdemeanor assault charge against Jimmy Collins. The jury found appellant guilty of assault on a peace officer, and on the misdemeanor assault count related to Jimmy Warner. The court sentenced appellant to a six-month term of incarceration on each count, to be served consecutively. The court reserved imposition of sentence on the conviction for assault of a peace officer, and suspended the sentence on the assault conviction. The court imposed a sanction of a five-year period of supervised community control.
 I {¶ 13} Appellant argues that the judgment of conviction is against the manifest weight of the evidence, as he kicked Officer Fulton in self defense. Appellant essentially argues that the testimony of the officers was not credible.
 {¶ 14} When a court of appeals reverses a judgment on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror, and disagrees with the factfinder's resolution of the conflicting testimony. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way. Id. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence is heavily against conviction. Id.
In the instant case, both Helen Jeanne Warner and appellant testified that the police instigated the physical altercation. However, all three officers testified that appellant took an aggressive stance almost immediately upon their arrival, threatening to hurt Officer Limbacher, and refusing to step away from the variety of tools surrounding him. They testified that while trying to handcuff appellant, he was continuously swinging at the officers. They testified that while attempting to unlock the cruiser, having successfully handcuffed appellant, he kicked Officer Fulton in the groin.
 {¶ 15} Joyce Morrell, the next door neighbor, testified that appellant was very rough with the officers, kicking and yelling profanity at them. She also testified that she did not see the officers strike appellant. Tr. 265.
 {¶ 16} The jury did not clearly lose its way in resolving the conflicts in the testimony. The judgment is not against the manifest weight of the evidence.
 {¶ 17} The first assignment of error is overruled.
 II {¶ 18} Appellant next argues that the court erred in refusing to instruct the jury that at the time Officer Limbacher confronted appellant, he had a right to remain silent, and to stand or sit there and do nothing. Tr. 442-43.
 {¶ 19} It is prejudicial error in a criminal case to refuse to give a requested charge which is pertinent to the case, states the law correctly, and is not covered by the general charge, or by another special charge which is given. State v. Brady(1988), 48 Ohio App.3d 41, citing Cincinnati v. Epperson(1969), 20 Ohio St.2d 59.
The Fifth Amendment right against self-incrimination applies to custodial interrogations. Miranda v. Arizona (1966), 384 U.S. 436. At the time the officer asked appellant his name and to step away from the variety of yard tools surrounding him, appellant was not in custody. The officers were on appellant's property for the purpose of investigating a domestic violence call, but had not yet placed appellant in custody. The situation did not escalate until appellant began verbally abusing and taking a physically aggressive stance with the officers. Appellant's reliance on Mirandais misplaced, as it did not apply to the encounter with Officer Limbacher.
 {¶ 20} Further, while the court refused to instruct the jury that appellant had a Fifth Amendment right not to speak to Officer Limbacher, when counsel for appellant asked questions during cross examination concerning Mirandawarnings, the trial court sua sponteexplained Mirandaand the right against self-incrimination to the jury. Tr. 167-70.
 {¶ 21} The second assignment of error is overruled.
 {¶ 22} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.
Judgment affirmed.
Hoffman and Farmer, JJ., concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs to appellant.